UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x

In re:

                                                  Case No.: 8-26-70463-ast

Quesnel Senatus,

                                                  Chapter 13

    Debtor.

------------------------------------------------------------------x

**MOTION SEEKING: (A) RELIEF FROM THE AUTOMATIC
STAY PURSUANT TO 11 U.S.C. §362(d)(1); (B) TERMINATION OF
THE CHAPTER 13 CO-DEBTOR STAY PURSUANT TO 11 U.S.C. §1301(c);
AND (C) GRANTING IN REM RELIEF PURSUANT TO 11 U.S.C. §362(d)(4)**
**(Foreclosure Judgment Entered)**

DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR RESIDENTIAL ASSET SECURITIZATION TRUST SERIES 2006-A14CB MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2006-N ("Secured Creditor"), by and through its undersigned counsel, moves this Court for prospective relief from the automatic stay, termination of the chapter 13 co-debtor stay, both as applied to the subject property and for *in rem* relief pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(4) and 1301(c), and states as follows:

1.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, 11 U.S.C. § 362 and FRBP 4001(a) and the various other applicable provisions of title 11 of the United States Code (the "Bankruptcy Code"), Federal Rules of Bankruptcy Procedure and the laws of the United States of America.  Venue is proper in this Court pursuant to 28 U.S.C. § 1409.

2.    On February 2, 2026, the debtor herein, Quesnel Senatus ("Debtor"), commenced the instant case (the "Present Case") by filing a petition under chapter 13 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of New York (the "Court").

**THE MORTGAGE LOAN**

3.    On August 2, 2006, Quesnel Senatus and Martina Senatus ("Co-Borrower") executed and delivered a Note ("Note") in the amount of $396,000.00 to First Rate Capital Corp., a New York

Corporation. On that same day, Debtor and Co-Borrower executed and delivered a Mortgage ("Mortgage") securing payment of the Note. The Mortgage was recorded on August 16, 2006 in Book 30854 at Page 414 of the Public Records maintained by the County Clerk of Nassau County, New York. The Note is properly endorsed and Secured Creditor is in possession of it, and the Mortgage has been duly assigned to Secured Creditor. Copies of the Note, Mortgage and Assignments of Mortgage are attached hereto as part of Exhibit "A."

4. The Mortgage provides Secured Creditor a lien on the real property legally described as:

ALL that certain plot, piece or parcel of land, with the buildings and improvements thereon erected, situate, lying and being in the Incorporated Village of Hempstead, Tow of Hempstead, County of Nassau and State of New York, known and designated as lots 89 and 90 in block 8 on a certain map entitled, "Map of Property of Hempstead Greens Land Co. Situated at Hempstead, Nassau County, New York, January 31, 1907, Thomas V. Smith, CE", and filed in the Office of the Clerk of the County of Nassau on August 9, 1907 as file number 24, which lots are more particularly bounded and described as follows:

BEGINNING at a point on the easterly side of Virginia Avenue, distant 261.50 feet southerly from the corner formed by the intersection of the easterly side of Virginia Avenue and the southerly side of West Graham Avenue;

RUNNING THENCE easterly and at right angles to the easterly side of Virginia Avenue, 100 feet;

THENCE southerly and parallel with the easterly side of Virginia Avenue, 40 feet;

THENCE westerly and again at right angles to the easterly side of Virginia Avenue, 100 feet to the easterly side of Virginia Avenue;

THENCE northerly along the easterly side of Virginia Avenue, 40 feet to the point or place of BEGINNNG.

5. This mortgaged property is located at the street address of 22 Virginia Avenue, Hempstead, New York 11550, Section 36, Block 55, Lot 89-90 (the "Property").

**CHAPTER 13 CO-DEBTOR STAY IN THE PRESENT CASE**

6. Co-Borrower is an executing party under the Note and Mortgage. Co-Borrower has a legal interest in the Property. Co-Borrower is a named defendant in the Foreclosure Action and a judgment debtor under the Foreclosure Judgment. Based on these facts, Secured Creditor believes the co-debtor stay under Bankruptcy Code section 1301(a) applies to Co-Borrower.

## DEFAULT AND FORECLOSURE ACTION

7.    The obligations under the Note and Mortgage fell into default in July 2015.  Due to the default, Secured Creditor has been attempting to exercise its legal and equitable remedies against the Property.  On October 29, 2015, a foreclosure action was commenced in New York State Supreme Court for the County of Nassau, Index No.: 9502-2015 against Debtor, Co-Borrower, other parties and the Property (the "Foreclosure Action").

8.    In the Foreclosure Action, the Hon. Thomas A. Adams, JSC, signed a foreclosure judgment in favor of Secured Creditor on March 7, 2019 (the "Foreclosure Judgment") and it was entered on March 11, 2019 (the "Judgment Date") and recorded on March 12, 2019.  A copy of the Foreclosure Judgment is annexed hereto as Exhibit "B."

## BANKRUPTCY CASE FILING HISTORY

9.    The Present Case is the fourth (4th) bankruptcy case commenced by the Debtor in this Court.  These cases all have involved the Property in some manner that triggered the automatic stay under Bankruptcy Code section 362.

10.   The cases filed by the Debtor (directly and indirectly) are:

  a.  Case Number 8-23-72748-ast, Chapter 7 filed *pro se* on July 27, 2023, and dismissed on October 18, 2023.

  b.  Case Number 8-24-70978-ast, Chapter 13 filed on March 12, 2024 and dismissed on January 3, 2025 for failure to make plan payments.  **This filing canceled a referee sale that had been scheduled for March 14, 2024.**

  c.  Case Number 8-25-71721-ast, Chapter 13 filed *pro se* on May 2, 2025 and dismissed on June 17, 2025. **This filing canceled a referee sale that had been scheduled for May 5, 2025.**

d. Current Case Number 8-26-70463-ast, Chapter 13 filed *pro se* on February 2, 2026. **This filing canceled a referee sale that had been scheduled for February 4, 2026.**

11. Copies of the Notices of Sale are annexed hereto as Exhibit "C."

12. The use of the four (4) bankruptcy case filings in the Court by Debtor has had the actual effect of delaying and inhibiting Secured Creditor from exercising its rights and remedies in the Foreclosure Action and then under the Foreclosure Judgment.  Each of the bankruptcy filings have been used to stall the Property sale process, either by barring the scheduling of a referee sale, as occurred with the 2023 case, or cancelling scheduled sales, as was the results of the other three cases.  There has never been a legitimate attempt to restructure the Mortgage Loan debt or obtain financial relief through a discharge.   This conduct strongly indicates that Debtor has conducted a scheme over multiple years to benefit from the bankruptcy automatic stay to impede the foreclosure sale process while simultaneously remaining in possession of the Property without cost.

<u>**PROPERTY VALUE AND JUDGMENT DEBT**</u>

13. As evidenced by the valuation submitted as Exhibit "D" hereto, the value of the Property is $1,300,000.00 as of December 22, 2025.  The current total debt under the Mortgage Loan is $1,063,462.96 as of February 17, 2026, with default in monthly payments since July 2015 and continuing to the present.  See the completed "Relief from Stay - Real Estate and Cooperative Apartments" form executed by the Secured Creditor annexed hereto as Exhibit "E" for a complete analysis of the loan status and default.

<u>**BASIS FOR RELIEF**</u>

14. Secured Creditor submits that it is entitled, not only to relief from the automatic stay in the Present Case under Bankruptcy Code section 362(d)(1) for cause as set forth above, *i.e.* long standing default under the Mortgage Loan, Foreclosure Action and entry of the Foreclosure Judgment, as well as no post-petition servicing or adequate protection payments.

15. Further, prospective (*In Rem*) relief from the automatic stay for cause is warranted.  The Debtor has been using the bankruptcy process to gain the benefit of the automatic stay to stall the foreclosure sale process, all the while never seeking to actually restructure, settle or resolve the mortgage based debt and lien against the Property.   This pattern evidences a pattern of conduct to use the bankruptcy process not for valid financial restructuring or relief, but solely as to hinder and delay the foreclosure process and sale of the Property under the Foreclosure Judgment.   These filings evidence of a lack of good faith on the part of the Debtor.  *See,* In re Waldron, 785 F.2d 936, 941 (11th Cir. 1986) ("whenever … a petition appears to be tainted by a questionable purpose, it is incumbent upon the bankruptcy courts to examine and question the Debtor's motives").   The facts and history are an example of bad faith.

16.  The Bankruptcy Code does not define good faith nor is there an explicit requirement that petitions be filed in good faith; yet, bankruptcy courts have repeatedly lifted the automatic stay and dismissed cases as bad faith filings.   The inference that good faith is required in order for debtors to continue to enjoy the exceptional relief afforded by the automatic stay and the other provisions of the Bankruptcy Code upholds the integrity of the bankruptcy courts:

> Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings.   Such a standard furthers the balancing process between the interest of Debtors and creditors which characterizes so many provisions of the bankruptcy laws and is necessary to legitimize the delay and costs imposed upon parties to a bankruptcy.  Requirement of good faith prevents abuse of the bankruptcy process by Debtors whose overriding motive is to delay

creditors without benefitting them in any way or to achieve reprehensible purposes. Moreover, a good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering their most powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshaling and turnover of assets) available only to those Debtors and creditors with "clean hands."

In re Little Creek Dev. Co., 779 F.2d 1068, 1071-72 (5th Cir. 1986) (citations omitted). See, also, In re Waldron, 785 F.2d 936 (11th Cir. 1986).

17. Following the Eighth Circuit's lead in In re Estus, 695 F.2d 311 (8th Cir. 1982) and the Eleventh Circuit's later analysis in In re Kitchens, 702 F.2d 885 (11th Cir. 1983), all of the Circuit Courts have embraced a "totality of the circumstances" approach to analyzing good faith, which involves consideration of a number of factors related to the contents of a debtor's plan, as well as conduct of the debtor. The Court is remined that there is no filed chapter 13 in the Present Case.

18. According to Kitchens, the prior conduct of a debtor can be considered in determining whether the debtor is demonstrating the sincerity and effort required to be a debtor in bankruptcy. The Eleventh Circuit listed the following factors, among others, as indicative of bad faith:

(5)     the motivations of the Debtor and his sincerity in seeking relief under the provisions of [the Bankruptcy Code];
(6)     the Debtor's degree of effort;
(9)     the frequency with which the Debtor has sought relief under the Bankruptcy Reform Act and its predecessors; [and]
(10)    the circumstances under which the Debtor has contracted his debts and has demonstrated bona fides, or lack of same, in dealings with his creditors.

Kitchens, 702 F.2d at 888-89.

19. Based upon the multiple filings, the failure to prosecute any prior case to a viable plan that addresses the Mortgage Loan, the dismissals of the prior cases, and as all of the cases have been commenced during the Foreclosure Action strongly suggests, if not clearly establishes an orchestrated scheme by the Debtor to benefit from the use of the Bankruptcy Code to retain possession of the Property with no cost, and to forestall the Secured Creditor's legitimate rights

under the Foreclosure Judgment to effect a sale of the Property under state law.  The Debtor's filed chapter 13 plan [ECF No. 7] does reference the Mortgage Loan in Section 3.2 but is devoid of any treatment for the arrears under the Mortgage Loan or for addressing the Foreclosure Judgment. Debtor has thus not used the Present case to propose a good faith plan to address the debt.  Instead, this years-long conduct clearly was for the sole purpose of delaying, hindering, or defrauding Secured Creditor.

20.  Clearly, a basis exists for termination of the automatic stay in the Present Case pursuant to Bankruptcy Code section 362(d)(1) based on the Foreclosure Judgment and lack of adequate protection and a viable chapter 13 plan.

21.  Secured Creditor submits that it is also entitled to prospective relief from the automatic stay pursuant to Bankruptcy Code section 362(d)(4) for cause, to wit, the prior successive bankruptcy filings and the filing of the instant bankruptcy case without any real prospect for a successful chapter 13 plan, which serial filings evidence a lack of good faith. *See*, In re Waldron, 785 F.2d 936, 941 (11th Cir. 1986).

22.  When seeking *In Rem* relief, the moving party has the burden of proof.  In re Lemma, 394 B.R. 315 (Bankr. E.D.N.Y. 2008).  A court can "infer an intent to hinder, delay, and defraud" under section 362(d)(4).  In re Procel, 467 B.R. 297, 308 (S.D.N.Y 2012).  Serial bankruptcy filings can be evidence of such intent. In re Blair, No. 09-76150, 2009 WL 5203738, at *4-5 (Bankr. E.D.N.Y. Dec. 21, 2009).  Here, Debtor has used the bankruptcy process over three years not to restructure the Mortgage Loan, resolve the Foreclosure Judgment or gain financial relief, but rather to prevent a referee sale of the Property.

23.  Intent can be inferred from a debtor's failure to prosecute the prior filed cases.  In re Montalvo, 416 B.R. 381 (Bankr. E.D.N.Y. 2009).  This Court dismissed most of the prior cases of

the Debtor.  Thus, the Debtor has repeatedly failed to act properly as a debtor under the Bankruptcy Code.

24. Secured Creditor respectfully suggests that the actions and conduct of the Debtor are clearly indicative of the intention to delay, hinder or defraud Secured Creditor.

25. Secured Creditor requests that *In Rem* relief be granted pursuant to Bankruptcy Code section 362(d)(4) so that any subsequent bankruptcy filing purporting to affect the Property during the two-year period would not cause the automatic stay to be effective against Secured Creditor and the Property.  A certified copy of the Order granting *In Rem* relief will be filed with the County Clerk's Office against the Property as prescribed in Section 362(d)(4).

### TERMINATION FO THE CO-DEBTOR STAY

26.  As discussed above, Co-Borrower is in title to the Property and was a signing party to the Mortgage and Note.  Secured Creditor believes she has the benefit of the Bankruptcy Code section 1301(a) co-debtor stay.  Under the circumstances here where stay relief under Bankruptcy Code section 362(d)(1) is warranted, it is necessary for the Court to terminate the co-debtor stay pursuant to Section 1301(c).  Co-Borrower is liable under the Mortgage Loan and the Foreclosure Judgment. Co-Borrower obtained a direct benefit from the Mortgage Loan as a result of being a signing party and having an interest in the Property.  The plan that has been filed is not viable as there is no proposed treatment for the Mortgage Loan default.  Secured Creditor cannot obtain full relief to conclude a sale of the Property under the Foreclosure Judgment while the co-debtor stay remains in place.  Accordingly, the criteria for co-debtor stay termination under Bankruptcy Code section 1301(c) is satisfied.

27.  Therefore, Secured Creditor maintains that cause exists pursuant to Bankruptcy Code sections 362(d)(1)and 1301(c) for the automatic stay and co-debtor stay to be terminated in the

Present Case, and that *In Rem* relief under section 362(d)(4) is warranted, and in fact, absolutely necessary to prevent any further improper use of the Bankruptcy Code and Bankruptcy Court by the Debtor, Co-Borrower, or anyone else asserting an interest in the Property with respect to the Property and Secured Creditor's enforcement of its rights and remedies.

28. In light of the circumstances, it is requested that the 14-day stay period under FRBP 4001(a)(4) be waived.  There is no reason for any further delay in the sale process per the Judgment efforts considering the filing of this case and the prior ones were clearly an attempt to forestall Secured Creditor's sale of the Property, which under law Secured Creditor has the absolute right to do. Under Rule 4001(a)(4), the Court has the authority to grant such waiver.

## KEEP THE CASE OPEN UNTIL THE STAY RELIEF MOTION IS DETERMINED

29. As this motion seeks *In Rem* relief under Bankruptcy Code section 362(d)(4), it is imperative that the Present Case not be dismissed before this stay relief motion is heard and determined by the Court.  Accordingly, Secured Creditor requests that the Court withhold entry of any order dismissing the Present Case until the Court has determined the instant stay relief motion, and if it grants it, until after an order granting relief, including *In Rem* relief, is entered.

## MISCELLANEOUS

30. Secured Creditor has incurred court costs and attorney's fees in this proceeding in the amount of $1,350.00 for attorney fees and $199.00 for the fee to file the motion, and will incur additional fees, costs and expenses in foreclosing the Mortgage and in preserving and protecting the Property, all of which additional sums are secured by the lien of the mortgage.  Secured Creditor seeks an award of its reasonable attorneys' fees and costs

**WHEREFORE**, Secured Creditor, prays this Honorable Court enter an order, pursuant to 11 U.S.C. §§ 362(d)(1), 362(d)(4) and 1301(c), granting relief from the automatic stay and

terminating the co-debtor stay in the Present Case and prospective relief from an automatic stay in a future bankruptcy case in regard to the Property for a period of two (2) years from the date of entry of the Order, and for such other and further relief as this Court may deem just and proper.

Dated:  Westbury, New York
        March 27, 2026

/s/ _Kevin R. Toole_____
Kevin R. Toole, Esq.
NYS Bar No. 1968221
Robertson, Anschutz, Schneid,
Crane & Partners, PLLC
Attorney for Secured Creditor
900 Merchants Concourse, Suite 310
Westbury, NY 11590
Telephone: 516-280-7675
Facsimile: 516-280-7674
 Email: ktoole@raslg.com